**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CARY INCE,

Plaintiff,

v. CASE NO.:

EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and MIDFLORIDA CREDIT UNION,

Defendants.
_________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Cary Ince (hereinafter "Plaintiff"), by and through her undersigned counsel, for her cause of action against Defendants, Equifax Information Services LLC (hereinafter "Equifax"); Experian Information Solutions, Inc. (hereinafter "Experian"); Trans Union LLC (hereinafter "Trans Union"); and MidFlorida Credit Union (hereinafter "MidFlorida") (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

## PRELIMINARY STATEMENT

1. This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA.

2. Today in America there are three major consumer reporting agencies, Equifax Information Services LLC (hereinafter "Equifax"), Trans Union LLC (hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

3. Consumer reporting agencies that create consumer reports, like Equifax, Experian, and Trans Union, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4. When a consumer like Plaintiff disputes information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5. The Consumer Financial Protection Bureau has noted, "experience indicates that [Credit Reporting Agencies] lack incentives and under-invest in accuracy". Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION AND VENUE

6. Jurisdiction for this Court is conferred by 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, as this action involves violations of the FCRA.

7. Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8. Venue is proper in this District as Plaintiff is a natural person and resident of Polk County in the State of Florida, which lies within the Tampa Division of this District; Defendants transact business within this District; and violations described in this Complaint occurred in this District.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Equifax is a limited liability company with its principal place of business in the State of Georgia and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

11. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

12. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

13. Experian is a corporation with its principal place of business in the State of California and is authorized to do business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Rd, Plantation, Florida 33324.

14. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

15. Experian disburses such consumer reports to third parties under contract for monetary compensation.

16. Trans Union is a limited liability company with its principal place of business in the State of Illinois and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

17. Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the

purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

18. Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

19. MidFlorida is a Florida credit union with its principal place of business in Lakeland, Florida, and may be served through its registered agent, Steve Moseley at 129 S. Kentucky Ave, Lakeland, FL 33801.

20. MidFlorida is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2.

21. MidFlorida furnished information about Plaintiff to Equifax, Experian and Trans Union that was inaccurate.

## FACTUAL ALLEGATIONS

22. On or about March 9, 2022, Plaintiff and her then-husband, Kurt Stefan, obtained a joint home equity line of credit from Prime Meridian Bank ("Prime Meridian") (the "HELOC Account"). The HELOC Account was secured by real property owned solely by Mr. Stefan (the "Property").

23. On or about December 8, 2024, Plaintiff and Mr. Stefan divorced.

24. On or about December 23, 2024, a complaint was filed seeking foreclosure of the Property.

25. Plaintiff and Prime Meridian thereafter entered into a settlement agreement (the "Settlement Agreement"). Under the Settlement Agreement, Plaintiff agreed to pay a certain sum of money, and in exchange Prime Meridian agreed to waive any rights it has or may have to seek a deficiency judgment against Plaintiff or to recover funds from her if the proceeds of the foreclosure sale of the Property were insufficient to fully pay off the final judgment of foreclosure.

26. Plaintiff fully performed under the Settlement Agreement. On or about June 23, 2025, Plaintiff transmitted the require money, by check dated June 5, 2025, to the specified account, as required by the Settlement Agreement.

27. Upon Plaintiff's payment, Plaintiff owed nothing further on the HELOC Account. After that point, Plaintiff was never again contacted regarding the HELOC Account or the Property.

28. On or about March 1, 2026, MidFlorida acquired Prime Meridian. Upon information and belief, MidFlorida succeeded to Prime Meridian's rights and obligations with respect to the HELOC Account, including its obligations under the Settlement Agreement, and thereafter began furnishing information about the HELOC Account to the CRAs (the "MidFlorida Account").

29. In or about May 2026, Plaintiff checked her credit score through Credit Karma and discovered that her score had dropped by approximately seventy (70) points. Upon reviewing her Equifax and Trans Union credit reports, Plaintiff discovered the MidFlorida Account, account number beginning 80000, opened March 9, 2022, reported as closed with a status of "Charge Off" and a balance of $4,621.00.

30. On or about June 8, 2026, Plaintiff obtained copies of her Equifax and Trans Union credit reports, which confirmed that both CRAs were reporting the MidFlorida Account as charged off with a balance of $4,621.00. Plaintiff was unable to obtain a copy of her Experian credit report; however, Experian's subsequent dispute results confirmed that Experian was likewise reporting the MidFlorida Account.

31. The reporting of the MidFlorida Account is inaccurate and materially misleading. Under the Settlement Agreement, Plaintiff paid the agreed upon funds in exchange for a waiver of any deficiency, and she owes nothing on the account. Reporting the MidFlorida Account as charged off with a balance owed falsely represents to anyone reviewing Plaintiff's credit file that she owes a debt that was expressly waived and that she defaulted on an obligation that she fully satisfied.

32. On or about June 15, 2026, Plaintiff sent detailed written dispute letters via Certified Mail to Equifax (Tracking #9589 0710 5270 3922 6807 77), Experian (Tracking #9589 0710 5270 3922 6807 46) and Trans Union (Tracking #9589 0710 5270 3922 6807 84). In the detailed letters Plaintiff included her social security number, address and date of birth to prove her identity. Furthermore, Plaintiff included images of her Social Security card and Florida Driver's License.

33. In her dispute letters, Plaintiff additionally informed the CRAs that the MidFlorida Account was being reported inaccurately as charged off with a balance owed, because she had paid the required sum under the Settlement Agreement in exchange for a waiver of any deficiency. Plaintiff enclosed a copy of the Settlement Agreement, a copy of her payment check, and copies of the MidFlorida tradeline as it appeared on her credit reports.

34. Upon information and belief, each of the CRAs forwarded Plaintiff's dispute to MidFlorida, as evidenced by the changes made to the MidFlorida Account following Plaintiff's disputes.

35. On or about July 8, 2026, Plaintiff received Equifax's response to her dispute. Equifax did not delete the MidFlorida Account or report a zero balance. Instead, Equifax changed the balance from $4,621.00 to $4,559.00, added a date

closed of December 4, 2025, changed the date of last payment from February 17, 2024 to July 9, 2024, and changed the charge-off amount from $12,419.00 to $4,599.00, while continuing to report the account as charged off with a balance owed.

36. On or about July 8, 2026, Plaintiff received Experian's response to her dispute (Report No.: 1832-4705-92). Experian did not delete the MidFlorida Account or report a zero balance. Instead, Experian changed the balance from $4,621.00 to $4,559.00, changed the charge-off amount from $12,419.00 to $4,599.00, changed the high balance from $180,000.00 to $180,142.00, and expanded the reported payment history from April 2026 – May 2026 to April 2022 – July 2026, while continuing to report the account as charged off with a balance owed.

37. On or about July 9, 2026, Plaintiff received Trans Union's response to her dispute (File No.: 469581650). Trans Union did not delete the MidFlorida Account or report a zero balance. Instead, Trans Union changed numerous fields, including the balance, date updated, last payment made, high balance, original charge-off amount, past due amount, date closed, remarks, maximum delinquency, and rating, while continuing to report the account as charged off with a balance $4,559.00.

38. That MidFlorida and the CRAs altered nearly every material data field on the MidFlorida Account in response to Plaintiff's disputes demonstrates that the information being reported was unreliable. Yet none of them corrected the one thing Plaintiff disputed: that she owes nothing.

39. Equifax failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher. Equifax received all the information necessary to have determined that Plaintiff owed no balance on the MidFlorida Account. Credit Reporting Agencies such as Equifax should be able to verify the veracity of Plaintiff's claims and that an error was made by MidFlorida.

40. Equifax never attempted to contact Plaintiff during the alleged investigation.

41. Trans Union failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher. Trans Union received all the information necessary to have determined that Plaintiff owed no balance on the MidFlorida Account. Credit Reporting Agencies such as Trans Union should be able to verify the veracity of Plaintiff's claims and that an error was made by MidFlorida.

42. Trans Union never attempted to contact Plaintiff during the alleged investigation.

43. Experian failed to conduct a reasonable investigation and simply parroted information it received from the furnisher. Experian received all the information necessary to have determined that Plaintiff owed no balance on the MidFlorida Account. Credit Reporting Agencies such as Experian should be able to verify the veracity of Plaintiff's claims and that an error was made by MidFlorida.

44. Experian never attempted to contact Plaintiff during the alleged investigation.

45. Upon information and belief, upon receiving notice of Plaintiff's disputes from the CRAs, MidFlorida failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by the CRAs in connection with the dispute investigation. As Prime Meridian's successor, MidFlorida had, or should have had, access to the Settlement Agreement and the record of Plaintiff's payment.

46. On or about August 27, 2026, Plaintiff obtained updated copies of her Equifax and Trans Union credit reports, and both CRAs were still reporting the MidFlorida Account as charged off with a balance owed.

47. On or about August 27, 2026, Plaintiff sent another set of detailed written dispute letters to Equifax, Experian and Trans Union, again including her identifying information and the supporting documentation described above.

48. As of the filing of this Complaint, upon information and belief, Equifax, Experian, and Trans Union have failed to review or conduct a reasonable investigation as to Plaintiff's disputes. The inaccurate reporting of the MidFlorida Account continues.

49. The CRAs have not conducted an actual investigation despite Plaintiff's pleas, and upon information and belief, simply continue to parrot off the back of the furnisher, MidFlorida.

50. MidFlorida has not conducted a reasonable investigation despite Plaintiff's numerous pleas.

51. Plaintiff continues to suffer as of the filing of this Complaint with Defendants' reluctance to conduct a thorough investigation into her disputes or otherwise make her credit file accurate. The Defendants continue to defame Plaintiff by reporting inaccurate derogatory information.

52. If at any point during this process, had the Defendants conducted a reasonable investigation in response to Plaintiff's disputes, the results would have been different.

53. Other individuals have lodged complaints similar to the Plaintiff's in this matter, including direct complaints, CFPB complaints, FTC complaints, and via lawsuits.

54. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

i. Monies lost by attempting to fix her credit. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, and wasted time; Plaintiff's attempts to correct her credit file have resulted in fees and costs;

ii. Mental anguish, added stress, aggravation, embarrassment, sleepless nights, and other related impairments to the enjoyment of life; Plaintiff is being physically affected by Defendants' reluctance to fix the errors;

iii. Reduction in credit score of approximately seventy (70) points as a result of the inaccurate reporting, which the Defendants failed to correct after failing to properly investigate the disputed information;

iv. Delay in applying for personal loans and lines of credit due to fear of denials from Plaintiff's lowered credit score;

v. Defamation as Plaintiff's information has been published to third parties including but not limited to Credit Karma and MyFICO to

calculate Plaintiff's credit score as well as to soft and promotional inquiries.

## CAUSES OF ACTION

### COUNT I
### Violation of 15 U.S.C. § 1681e(b) as to Defendant, Equifax Information Services LLC (Negligent)

55. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

56. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

57. Equifax allowed for a Furnisher, such as MidFlorida, to report inaccurate and erroneous account information to Plaintiff's credit file.

58. Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

59. Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

60. Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

61. As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

62. The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

63. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual damages against Defendant, Equifax Information Services LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT II**
**Violation of 15 U.S.C. § 1681e(b) as to**

**Defendant, Equifax Information Services LLC (Willful)**

64. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

65. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

66. Equifax allowed for a Furnisher, such as MidFlorida, to report inaccurate and erroneous account information to Plaintiff's credit file.

67. Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

68. Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

69. Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

70. As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional

distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

71. The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

72. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Equifax Information Services LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT III**
**Violations of 15 U.S.C. § 1681i as to**
**Defendant, Equifax Information Services LLC (Negligent)**

73. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

74. After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) merely updating data fields supplied by the furnisher rather than correcting the disputed balance and status; (iv) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (v) failing to review and consider all relevant information submitted by Plaintiff in the disputes, including the Settlement Agreement; and (vi) relying upon verification from a source it has to know is unreliable.

75. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Equifax failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

76. Plaintiff provided Equifax with the information it needed to confirm the pay status and balance of the MidFlorida tradeline were inaccurate. Equifax ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

77. As a direct result of this conduct, action and/or inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

78. The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

79. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual damages against Defendant, Equifax Information Services LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT IV
## Violations of 15 U.S.C. § 1681i as to Defendant, Equifax Information Services LLC (Willful)

80. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

81. After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) merely updating data fields supplied by the furnisher rather than correcting the disputed balance and status; (iv) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (v) failing to review and consider all relevant information submitted by Plaintiff in the disputes, including the Settlement Agreement; and (vi) relying upon verification from a source it has to know is unreliable.

82. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Equifax failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

83. Plaintiff provided Equifax with the information it needed to confirm the pay status and balance of the MidFlorida tradeline were inaccurate. Equifax

ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

84. As a direct result of this conduct, action and/or inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

85. The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

86. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Equifax Information Services LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT V**
**Violation of 15 U.S.C. § 1681e(b) as to**
**Defendant, Experian Information Solutions, Inc. (Negligent)**

87. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

88. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

89. Experian allowed for a Furnisher, such as MidFlorida, to report inaccurate and erroneous account information to Plaintiff's credit file.

90. Upon information and belief, Experian does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

91. Experian selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

92. Experian chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

93. As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from

lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

94. The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual damages against Defendant, Experian Information Solutions, Inc.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT VI
## Violation of 15 U.S.C. § 1681e(b) as to Defendant, Experian Information Solutions, Inc. (Willful)

96. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

97. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

98. Experian allowed for a Furnisher, such as MidFlorida, to report inaccurate and erroneous account information to Plaintiff's credit file.

99. Upon information and belief, Experian does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

100. Experian selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

101. Experian chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

102. As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

103. The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

104. Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Experian Information Solutions, Inc.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT VII
## Violations of 15 U.S.C. § 1681i as to Defendant, Experian Information Solutions, Inc. (Negligent)

105. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

106. After receiving Plaintiff's disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) merely updating data

fields supplied by the furnisher rather than correcting the disputed balance and status; (iv) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (v) failing to review and consider all relevant information submitted by Plaintiff in the disputes, including the Settlement Agreement; and (vi) relying upon verification from a source it has to know is unreliable.

107. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Experian failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

108. Plaintiff provided Experian with the information it needed to confirm the pay status and balance of the MidFlorida tradeline were inaccurate. Experian ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

109. As a direct result of this conduct, action and/or inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress,

anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

110. The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

111. Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual damages against Defendant, Experian Information Solutions, Inc.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT VIII**
**Violations of 15 U.S.C. § 1681i as to**
**Defendant, Experian Information Solutions, Inc. (Willful)**

112. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

113. After receiving Plaintiff's disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and

reasonable reinvestigation into Plaintiff's disputes; (iii) merely updating data fields supplied by the furnisher rather than correcting the disputed balance and status; (iv) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (v) failing to review and consider all relevant information submitted by Plaintiff in the disputes, including the Settlement Agreement; and (vi) relying upon verification from a source it has to know is unreliable.

114. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Experian failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

115. Plaintiff provided Experian with the information it needed to confirm the pay status and balance of the MidFlorida tradeline were inaccurate. Experian ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

116. As a direct result of this conduct, action and/or inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress,

anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

117. The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

118. Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Experian Information Solutions, Inc.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT IX**
**Violation of 15 U.S.C. § 1681e(b) as to**
**Defendant, Trans Union LLC (Negligent)**

119. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

120. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the

preparation of the credit report and credit files it published and maintains concerning Plaintiff.

121. Trans Union allowed for a Furnisher, such as MidFlorida, to report inaccurate and erroneous account information to Plaintiff's credit file.

122. Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

123. Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

124. Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

125. As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

126. The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

127. Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual damages against Defendant, Trans Union LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT X**
**Violation of 15 U.S.C. § 1681e(b) as to Defendant, Trans Union LLC (Willful)**

128. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

129. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

130. Trans Union allowed for a Furnisher, such as MidFlorida, to report inaccurate and erroneous account information to Plaintiff's credit file.

131. Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

132. Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

133. Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

134. As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

135. The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

136. Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Trans Union LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT XI**
**Violations of 15 U.S.C. § 1681i as to**
**Defendant, Trans Union LLC (Negligent)**

137. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

138. After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) merely updating data fields supplied by the furnisher rather than correcting the disputed balance and status; (iv) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (v) failing to review and

consider all relevant information submitted by Plaintiff in the disputes, including the Settlement Agreement; and (vi) relying upon verification from a source it has to know is unreliable.

139. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

140. Plaintiff provided Trans Union with the information it needed to confirm the pay status and balance of the MidFlorida tradeline were inaccurate. Trans Union ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

141. As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

142. The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

143. Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual damages against Defendant, Trans Union LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT XII
## Violations of 15 U.S.C. § 1681i as to Defendant, Trans Union LLC (Willful)

144. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

145. After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) merely updating data fields supplied by the furnisher rather than correcting the disputed balance and

status; (iv) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (v) failing to review and consider all relevant information submitted by Plaintiff in the disputes, including the Settlement Agreement; and (vi) relying upon verification from a source it has to know is unreliable.

146. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

147. Plaintiff provided Trans Union with the information it needed to confirm the pay status and balance of the MidFlorida tradeline were inaccurate. Trans Union ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

148. As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

149. The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

150. Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Trans Union LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT XIII**
**Violation of 15 U.S.C. § 1681s-2(b) as to**
**Defendant, MidFlorida Credit Union (Negligent)**

151. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

152. MidFlorida furnished inaccurate account information to Equifax, Experian, and Trans Union and through those CRAs to all of Plaintiff's potential lenders.

153. After receiving notice of Plaintiff's disputes from the CRAs, MidFlorida violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the erroneous account information; (ii) failing to review all relevant information regarding same, including the Settlement Agreement and the record of Plaintiff's $20,000.00 payment; (iii) failing to accurately respond to Equifax, Experian, and Trans Union; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agencies.

154. Plaintiff provided all the relevant information and documents necessary for MidFlorida to have identified that the account pay status and balance were erroneous.

155. MidFlorida knowingly chose to follow procedures which did not review, confirm, or verify the account pay status and balance were accurate.

156. MidFlorida violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Equifax, Experian, and Trans Union after it had been notified that the information it was furnishing was inaccurate.

157. As a direct result of this conduct, action, and/or inaction of MidFlorida, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical

injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

158. The conduct, action, and/or inaction of MidFlorida was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

159. Plaintiff is entitled to recover costs and attorney's fees from MidFlorida in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual damages against Defendant, MidFlorida Credit Union; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT XIV**
**Violation of 15 U.S.C. § 1681s-2(b) as to**
**Defendant, MidFlorida Credit Union (Willful)**

160. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-four (54) above as if fully stated herein.

161. MidFlorida furnished inaccurate account information to Equifax, Experian, and Trans Union and through those CRAs to all of Plaintiff's potential lenders.

162. After receiving notice of Plaintiff's disputes from the CRAs, MidFlorida violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the erroneous account information; (ii) failing to review all relevant information regarding same, including the Settlement Agreement and the record of Plaintiff's $20,000.00 payment; (iii) failing to accurately respond to Equifax, Experian, and Trans Union; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agencies.

163. Plaintiff provided all the relevant information and documents necessary for MidFlorida to have identified that the account pay status and balance were erroneous.

164. MidFlorida knowingly chose to follow procedures which did not review, confirm, or verify the account pay status and balance were accurate.

165. MidFlorida violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Equifax, Experian, and Trans Union after it had been notified that the information it was furnishing was inaccurate.

166. As a direct result of this conduct, action, and/or inaction of MidFlorida, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

167. The conduct, action, and/or inaction of MidFlorida was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

168. Plaintiff is entitled to recover costs and attorney's fees from MidFlorida in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, MidFlorida Credit Union; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Cary Ince, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendants, Equifax Information Services LLC; Experian Information Solutions, Inc.; Trans Union LLC; and MidFlorida Credit Union, jointly and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 16th day of October, 2026.

Respectfully submitted,

***/s/ Octavio Gomez***

Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963
Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Suite 610
Tampa, Florida 33602
Cell: (813) 299-8537
Facsimile: (844) 951-3933
Tav@theconsumerlawyers.com
Lisa@theconsumerlawyers.com
*Attorney for Plaintiff*